UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re BLACKROCK MUTUAL FUNDS ADVISORY FEE LITIGATION | Master File No. 3:14-cv-01165-JAP-DEA<br><br>Motion date:  August 18, 2014<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING THE COMPLAINT**

Andrew Muscato
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York 10036
(212) 735-3000 (Telephone)
(212) 735-2000 (Facsimile)
andrew.muscato@skadden.com


Of Counsel:
Seth M. Schwartz
Jeremy A. Berman

Attorneys for Defendants
BlackRock Advisors, LLC,
BlackRock Investment Management, LLC
and BlackRock International Limited

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF
THE ICA ............................................................................................................................1

    A.    Comparative Fee Structures ...................................................................................1

    B.    Economies of Scale ................................................................................................6

    C.    The Funds' Directors...............................................................................................9

CONCLUSION ..............................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

Advanced Rehabilitation, LLC v. UnitedHealth Group, Inc.,
    498 F. App'x 173 (3d Cir. 2012) ..................................................................................6

Amron v. Morgan Stanley Investment Advisors Inc.,
    464 F.3d 338 (2d Cir. 2006) ....................................................................................6, 7

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ..........................................................................................6, 8, 11

Curran v. Principal Management Corp.,
    No. 4:09-CV-NY33, 2010 WL 2889752 (S.D. Iowa June 8, 2010), modified, No.
    4:09-cv-00433 RP-CFB, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ...................4, 5, 8

In re Franklin Mutual Funds Fee Litigation,
    478 F. Supp. 2d 677 (D.N.J. 2007) ............................................................................7

Gartenberg v. Merrill Lynch Asset Management, Inc.,
    528 F. Supp. 1038 (S.D.N.Y. 1981), aff'd, 694 F.2d 923 (2d Cir. 1982) ..................7

Hoffman v. UBS-AG,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ................................................................7, 8, 9

Jones v. Harris Associates L.P.,
    559 U.S. 335 (2010) ....................................................................................................6

Kasilag v. Hartford Investment Financial Services, LLC,
    No. 11-1083 (RMB/KMW), 2012 WL 6568409 (D.N.J. Dec. 17, 2012) .............4, 5, 8

Krinsk v. Fund Asset Management, Inc.,
    875 F.2d 404 (2d Cir. 1989) ..................................................................................7, 10

Mintz v. Baron,
    No. 05 Civ. 4904 (LTS)(HBP), 2009 U.S. Dist. LEXIS 22636
    (S.D.N.Y. Mar. 20, 2009) ...........................................................................................9

New Jersey Title Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh,
    No. 11-CV-0630 (DMC)(JAD), 2011 U.S. Dist. LEXIS 149162
    (D.N.J. Dec. 27, 2011) ................................................................................................6

R.W. Grand Lodge of F.& A.M. of Pennsylvania v. Salomon Brothers All Cap
    Value Fund,
    425 F. App'x 25 (2d Cir. 2011) .............................................................................5, 10

Reso v. Artisan Partners Limited Partnership,
    No. 11-cv-873-JPS, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) .....................................8

In re Salomon Smith Barney Mutual Fund Fees Litigation,
    528 F. Supp. 2d 332 (S.D.N.Y. 2007), aff'd in part, vacated in part on other
    grounds sub nom., R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon
    Brothers All Cap Value Fund, 425 F. App'x 25 (2d Cir. 2011) .......................................7, 10

**RULES**

Fed. R. Civ. Proc. Rule 12(c) ...............................................................................................................1

Defendants BlackRock Advisors, LLC ("BRA"), BlackRock Investment Management, LLC ("BRIM"), and BlackRock International Limited ("BRIL," along with BRA and BRIM, "BlackRock") respectfully submit this reply memorandum of law in further support of their motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings dismissing the Consolidated Complaint in this action (the "Complaint") on the ground it fails to state a claim for relief.[1]

## ARGUMENT

### THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 36(B) OF THE ICA

**A.   Comparative Fee Structures**

In its Opening Brief ("Open. Br."), BlackRock demonstrated that BRA's advisory fees are lower than those charged by the sponsors (the "adviser-sponsors") of the Sub-Advised Funds. (Open. Br. at 11-12.)  Faced with this indisputable fact, plaintiffs contend that this comparison is "'not particularly meaningful'" because it "'does not address the particular services offered by the defendants in this case.'"  (Opp'n at 20, quoting Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 327 (4th Cir. 2001) (emphasis omitted).)  To the contrary, the comparison is quite meaningful, particularly since plaintiffs have made comparative fee structures the centerpiece of their Complaint.  As for the "particular services" rendered by defendants, plaintiffs have the burden of plausibly alleging facts to show that the advisory services BRA renders to the BlackRock Funds bear no reasonable relationship to BRA's advisory fee, i.e., the portion of the fee that BRA retains after compensating BRIM for its sub-advisory

---

[1]   Capitalized terms not otherwise defined herein are defined as set forth in BlackRock's opening brief in support of this motion. (Docket No. 34-1.)

services on behalf of the Funds. (See Open. Br. at 5, 7.) Plaintiffs' failure to meet this burden does not make BlackRock's apples-to-apples comparison any less meaningful. Rather, it confirms that plaintiffs have failed to state a claim under Section 36(b) of the ICA.

With respect to advisory services, the Complaint alleges that BRIM renders "the same or substantially the same services" to both the BlackRock Funds and the Sub-Advised Funds. (Compl. ¶ 76.) Moreover, as demonstrated in BlackRock's Opening Brief, BRIM receives essentially the same sub-advisory fees from all of the funds, BlackRock and Sub-Advised alike. (See Open. Br. at 11-12.) In addition, the "all-in" advisory fees BRA receives before splitting them with BRIM are lower than those received by the adviser-sponsors of the Sub-Advised Funds. (Id.) These uncontroverted facts are fatal to the gravamen of plaintiffs' Section 36(b) claim – namely, the BlackRock Funds allegedly pay higher advisory fees than the Sub-Advised Funds for the same services.

Undaunted, plaintiffs attempt to salvage their Complaint by relying on their apples-to-oranges comparison of BRA's advisory fees with BRIM's sub-advisory fees, i.e., their comparison of (a) the "all-in" *advisory* fees BRA receives from the BlackRock Funds with (b) the *sub-advisory* fees BRIM receives from the adviser-sponsors to the Sub-Advised Funds, which necessarily are a fraction of the "all-in" advisory fees. Plaintiffs seek to justify this apples-to-oranges comparison by contending that "the record does not include any facts that advisory fees charged by the adviser-sponsors to the Subadvised Funds are not excessive themselves . . . or that the services provided by the adviser-sponsors to the Subadvised Funds are comparable to the services provided by [BRA] to the [BlackRock Funds]." (Opp'n at 19.)

Plaintiffs' justification for their fee comparison lays bare their true thesis. In plain English, according to plaintiffs, BRIM purportedly does everything for the BlackRock Funds and

2

BRA purportedly does nothing, rendering BRA's retained portion of the advisory fee excessive. (See Opp'n at 19-21.)  The fatal flaw with this theory is that the Complaint alleges no facts to plausibly show that BRA does nothing to earn its share of the fee.  According to plaintiffs, the Complaint makes this showing by "compar[ing] the [BlackRock Funds'] IMAs with the Subadvised Funds' subadvisory agreements."  (Opp'n at 15.)  Plaintiffs contend that this comparison "shows that both sets of agreements require BlackRock to provide the same or substantially the same types of investment advisory services."  (Id.)  Based on the false premise that BRA is required to provide the same advisory services to the BlackRock Funds that BRIM is required to provide to the Sub-Advised Funds, plaintiffs jump to the conclusion that the "higher fees charged to the BlackRock Funds . . . cannot be explained by any difference in BlackRock's investment advisory services."  (Id.)

In reality, the BlackRock Funds are charged advisory fees lower than those charged to the Sub-Advised Funds, as shown by the Fund prospectuses on which plaintiffs rely. (Open. Br. at 11-12.)  But even ignoring this inconvenient truth, plaintiffs' central premise – that BRA has delegated everything to BRIM and renders no services of its own – is undermined by the same advisory and sub-advisory agreements plaintiffs cite for this proposition.  Indeed, the BlackRock Fund IMAs require BRA, as investment adviser, to render a number of advisory services *not* required of BRIM as sub-adviser to the Sub-Advised Funds.

Pursuant to the IMAs, BRA is responsible for, among other things, "supervis[ing] continuously the investment program of the Fund and the composition of its investment portfolio." (Answer Ex. A, ¶ 2; id. Ex. D, ¶ 2.)  No such services are required of BRIM under its sub-advisory agreements with the adviser-sponsors to the Sub-Advised Funds.  (See Muscato Aff. Exs. A-J.)  This difference is significant because BRA's oversight responsibilities under the

3

IMAs are plainly substantial, as a review of the Schedule of Investments in the Funds' Annual Reports graphically illustrates. (See Answer Ex. L at 8-25; Id. Ex. M at 10-16.) For example, the Report for the BGA Fund shows that for the fiscal year ended October 1, 2013, the Fund had net assets of almost $58 billion, comprised of thousands of different stocks, fixed income securities, options and other derivatives issued by companies and government instrumentalities located in approximately 40 countries.[2] (See Answer Ex. L at 9-26.) Tellingly, the Complaint does not fully acknowledge the scope and size of the BGA Fund, nor does it allege any facts sufficient to plausibly show that BRA's fee bears no reasonable relationship to the services it performs in discharging its responsibility of continuously supervising the investments of a $58 billion global investment fund.[3]

The foregoing facts stand in marked contrast to those presented in decisions on which plaintiffs heavily rely, such as Kasilag v. Hartford Investment Financial Services, LLC, No. 11-1083 (RMB/KMW), 2012 WL 6568409 (D.N.J. Dec. 17, 2012) and Curran v. Principal Management Corp., No. 4:09-CV-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), modified,

---

[2] For the fiscal year ended July 31, 2013, the BDF Fund had net assets of more than $29.8 billion. (Answer Ex. M at 11-12.)

[3] Plaintiffs fare no better with their attack on BRA's compensation for administrative services, which is governed by the IMAs, the Amended and Restated Shareholders' Administrative Services Agreement between BRA and the BlackRock Funds, and the Amended Accounting Support Services Agreement between those parties. (See Answer Exs. A, D, F, G.) While plaintiffs contend that there are third parties who could provide the same services at lower cost to the Funds (see Opp'n at 15-16 n.6), this allegation lacks plausibility given that (a) the Complaint does not identify the specific types of administrative services that BRA renders to the BGA Fund or the BDF Fund, (b) the operative agreements limit BRA's compensation for administrative services to reimbursement of its out-of-pocket expenses in providing them (Answer Ex. A, ¶ 3 at 4; id. Ex. D, ¶ 3 at 4; id. Ex. F, ¶ 3; id. Ex. G, ¶ 2), and (c) the Complaint contains no plausible allegation of fact showing that there is any third party who would be willing to duplicate any of the administrative services actually rendered by BRA in exchange for a fee that is lower than BRA's cost of providing them.

No. 4:09-cv-00433 RP-CFB, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011).  (Opp'n at 17.)  The opinions in those cases give no indication that the courts had before them any advisory or sub-advisory agreements or other SEC filings establishing the differences in the advisory services rendered by the advisers and sub-advisers involved in the litigation, or the size and scope of the investments made on behalf of the funds at issue.  Without the underlying documents in the record, the courts credited the plaintiffs' characterization of those documents and accepted as true the accompanying allegation that the defendant advisers paid their sub-advisers a fraction of the fee they received for rendering substantially the same services.  See Kasilag, 2012 WL 6568409, at *3; Curran, 2010 WL 2889752, at *8.

In contrast, in this case, the IMAs and other documents integral to plaintiffs' Complaint are before this Court as exhibits to BlackRock's Answer.  On their face, these documents show that BRA and BRIM are not responsible for rendering the same services to the BlackRock Funds and the Sub-Advised Funds, respectively.  The documents also show that BRA alone has substantial responsibility for continuous oversight of the management of the billions of dollars of assets invested on behalf of the BlackRock Funds, while the Complaint alleges no facts whatsoever to plausibly show that BRA's share of the advisory fees it retains bears no reasonable relationship to the services it performs in managing the Funds pursuant to the IMAs.[4]

---

[4]  R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Brothers All Cap Value Fund, 425 F. App'x 25 (2d Cir. 2011) (Opp'n at 17-18) also is readily distinguishable.  There, the complaint alleged that defendants caused the funds they managed to fire an unaffiliated transfer agent and replace it with one of defendants' affiliates.  The affiliate allegedly collected the same fee as its unaffiliated predecessor but provided no services to the funds, electing instead to subcontract the work to its predecessor at a steep discount without passing the savings on to the funds' shareholders.  R.W. Grand Lodge, 425 F. App'x at 30.  In light of these alleged facts, the Second Circuit ruled that the plaintiffs had pled a plausible factual basis for their claim that "Defendants `knowingly inflated the price of the transfer agent services provided to Plaintiffs and pocketed the difference between what they charged and what the services were worth." Id. at 31.  By contrast, in this case, the Complaint alleges no
*(cont'd)*

5

Under the circumstances, plaintiffs' suggestion that BRIM does everything and BRA does nothing is highly implausible. Cf. Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 341 (2d Cir. 2006) (finding no facts alleged to support claim under Section 36(b) that services rendered "were of no value"); see also N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 11-CV-0630 (DMC)(JAD), 2011 U.S. Dist. LEXIS 149162, at *11 (D.N.J. Dec. 27, 2011) ("'When allegations contained in a complaint are contradicted by the document it cites, the document controls.'" (citation omitted)). The documents on which plaintiffs rely show that there is a "more likely" or "'obvious alternative explanation'" for BRA's fee, see Ashcroft v. Iqbal, 556 U.S. 662, 681-82 (2009) (citation omitted):  BRA renders advisory services of substantial value to the BlackRock Funds and the portion of the advisory fee it retains bears a "reasonable relationship to the services rendered." See Jones v. Harris Assocs. L.P., 559 U.S. 335, 346 (2010).[5]

**B.    Economies of Scale**

As demonstrated in BlackRock's Opening Brief, plaintiffs have not adequately alleged the existence of economies of scale or a failure to share economies, if any. The great weight of authority holds as a matter of law, both on motion and after trial, "that the fact that 'expenses . . . declined at a time when the Fund size grew . . . does not establish that such decline

---
*(cont'd from previous page)*
    facts to plausibly show that BRA arbitrarily marked up its advisory fee or otherwise accepted a deliberately inflated fee bearing no reasonable relationship to the advisory services it rendered to the BlackRock Funds.

[5] In light of plaintiffs' failure to satisfy the applicable plausibility standard, their contention that they need not "plead facts with respect to all of the Gartenberg factors" (Opp'n at 12), is beside the point. At a minimum, they "must allege 'enough facts to state a claim to relief that is plausible on its face.'" Advanced Rehabilitation, LLC v. UnitedHealth Grp., Inc., 498 F. App'x 173, 176 (3d Cir. 2012) (citation omitted). Plaintiffs' failure to do so here in a Complaint that references three of the Gartenberg factors warrants dismissal of their pleading.

6

was necessarily due to economies of scale.'" E.g., Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 411 (2d Cir. 1989) (affirming dismissal of Section 36(b) claim challenging advisory fees).[6] Yet this is the only "fact" alleged by plaintiffs in their Complaint in attempting to show that BRA has realized economies of scale in managing the BlackRock Funds. (See Compl. ¶¶ 98-99.) Courts repeatedly have rejected the same conclusory allegation as insufficient, regardless of whether the advisory services in question are rendered to mutual funds or money market funds. See, e.g., Krinsk, 875 F.2d at 411; Amron, 464 F.3d at 345 (Rule 12(b)(6) dismissal of a Section 36(b) claim challenging advisory fees received by adviser to mutual funds); Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008) (same); In re Franklin Mutual Funds Fee Litig., 478 F. Supp. 2d 677, 687 (D.N.J. 2007) (same); In re Salomon Smith Barney Mutual Fund Fees Litig., 528 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2007), aff'd in part, vacated in part on other grounds sub nom., R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Brothers All Cap Value Fund, 425 F. App'x 25 (2d Cir. 2011).

Such allegations have been rejected because economies of scale are neither automatic nor inevitable. Economies of scale exist when there is a "'decline in a product's per-unit production cost resulting from increased output,'" i.e., when there are "'savings resulting from the greater efficiency of large-scale processes.'" Hoffman, 591 F. Supp. 2d at 539 n.32

---

[6] There is no merit to plaintiffs' contention that the economies of scale at issue in Krinsk pertained to "shareholder services," rather than to investment advisory services. (Opp'n at 24.) Investment advisory fees were at issue in Krinsk, and the Second Circuit rejected as insufficient conclusory allegations that the cost of rendering advisory services declined as the size of the funds grew. See Krinsk, 875 F.2d at 408, 411 (affirming trial court's finding that plaintiff "failed to prove that the *advisory fee* was disproportionately large") (emphasis added). Plaintiffs' reliance on Gartenberg v. Merrill Lynch Asset Management, Inc., 528 F. Supp. 1038 (S.D.N.Y. 1981), aff'd, 694 F.2d 923 (2d Cir. 1982) (Opp'n at 24), also is misplaced because the district court's observation that "it may be almost as easy to invest a block of $100 million as a block of $10 million," 528 F. Supp. at 1055, is pure dicta.

7

(citation omitted). Thus, to adequately allege the existence of economies of scale, plaintiffs must plead facts sufficient to plausibly show "the actual transaction costs at issue and whether the costs per investor increased or decreased as the assets under management grew." Id. at 540. Absent such information, "there is no way to determine whether any economy of scale even existed that could have been passed on to investors or whether there is another explanation for the statistics chosen by Plaintiffs." Id.

Here, the Complaint merely asserts in conclusory fashion that "BlackRock realized economies of scale as the Funds' AUM increased, which reduced the cost, as a percentage of the Funds' AUM, of providing investment advisory services to each Fund." (Compl. ¶ 99.) This is nothing more than "'a formulaic recitation'" of the definition of 'economies of scale,' a "'naked assertion[]' devoid of 'further factual enhancement.'" See Iqbal, 556 U.S. at 678 (citations omitted). It therefore falls far short of plausibly establishing whether (and to what extent) the costs per investor of rendering advisory services decreased with the growth of the Funds' assets under management. Id. Accordingly, the Complaint fails to allege facts sufficient to establish that BRA has realized economies of scale in managing the investments of the BlackRock Funds. See Hoffman, 591 F. Supp. 2d at 539-40.[7]

With respect to breakpoints, plaintiffs fail in their attempt to distinguish Hoffman, which holds that a "differential in breakpoints between sub-advisors and investment advisors is

---

[7] To be sure, the courts in Kasilag, 2012 WL 6568409, at *6, Curran, 2010 WL 2889752, at *8-9, and Reso v. Artisan Partners Limited Partnership, No. 11-cv-873-JPS, 2011 WL 5826034, at *9 (E.D. Wis. Nov. 18, 2011), ruled that the conclusory allegations of the complaints in those cases were sufficient to plead the existence of economies of scale. (See Opp'n at 22-23.) But by relying solely on "'naked assertion[s]' devoid of 'further factual enhancement'" to make that determination, the courts in those cases did not correctly apply Iqbal's plausibility standard. See Iqbal, 556 U.S. at 678 (alteration in original) (citation omitted). Those decisions, therefore, are not persuasive authority.

irrelevant to the issues of economies of scale." 591 F. Supp. 2d at 540. (See Opp'n at 25.) In this case, the documents integral to the Complaint show that BRA has contractual obligations to render valuable advisory services to the BlackRock Funds that are separate and distinct from those rendered by BRIM to the Sub-Advised Funds. Thus, here, as in Hoffman, the "differences in services and compensation packages alone justify the different breakpoint arrangements." Hoffman, 591 F. Supp. 2d at 540. In the same vein, plaintiffs' allegation that BRA's breakpoints are too high (see Compl. ¶¶ 102-111) is insufficient "to establish [that BRA] fail[ed] to pass along economies of scale," id., particularly where, as here, the Complaint fails to allege facts sufficient to show the extent to which BRA's "'per unit cost of performing Fund transactions decreased as the number of transactions increased.'" Mintz v. Baron, No. 05 Civ. 4904 (LTS)(HBP), 2009 U.S. Dist. LEXIS 22636, at *9 (S.D.N.Y. Mar. 20, 2009) (citation omitted). Indeed, absent allegations of fact showing the magnitude of the costs savings, if any, realized from economies of scale, plaintiffs have no basis for criticizing the size of the fee reductions generated by BRA's breakpoints, much less a plausible claim that the reductions are "too small" relative to any purported cost savings realized by BRA. (Cf. Opp'n at 22.)

**C.     The Funds' Directors**

In their Opposition Brief, plaintiffs accuse BlackRock of "ignor[ing] eleven separate paragraphs in the Complaint setting forth specific allegations of the Board's lack [of] conscientiousness." (Id.) In reality, BlackRock addressed those allegations in its Opening Brief, where it demonstrated that they are all conclusory and insufficient to show that the directors of the BlackRock Funds are "interested" or were less than conscientious in reviewing and approving the BlackRock Funds' advisory fees. (Open. Br. at 14-16.) A paragraph-by-paragraph review of each of the eleven paragraphs reinforces this conclusion.

One of the paragraphs merely recites that the Funds' directors review and approve the advisory fees BRA receives from the Funds. (Compl. ¶ 122.) Another paragraph faults the directors for relying in part on information presented by BlackRock, an allegation that plaintiffs now concede is commonplace and "mundane." (Compare Compl. ¶ 126 with Opp'n at 29.) Three of the eleven paragraphs are comprised of conclusory allegations attacking the directors on the ground they serve on multiple fund boards and purportedly cannot adequately assess the Funds' advisory fees, allegations that courts repeatedly have been rejected as insufficient.[8] (Compare Compl. ¶ ¶ 123-125 with Opening Br. at 15-16.) Three additional paragraphs are based on the conclusory – and demonstrably erroneous – premise that the BlackRock Funds pay advisory fees higher than those paid by BlackRock's other clients. (Compare Compl. ¶ ¶ 128, 131, 132 with Opening Br. at 11-12.) Two of the paragraphs fault the directors for "not soliciting proposals from other advisers" and "not negotiat[ing] a 'most favored nation' provision in the IMAs" (id. ¶ ¶ 129, 130), but these allegations are at best irrelevant given that the directors have no duty under Section 36(b) to "negotiate . . . the 'best deal' possible" for the BlackRock Funds. See Krinsk, 875 F.2d at 409. As for the eleventh paragraph, it baldly alleges that the

---

[8] Contrary to plaintiffs' suggestion (see Opp'n at 29), the Second Circuit in R.W. Grand Lodge did not reverse or otherwise disturb the district court's finding that the complaint failed to state a Section 36(b) claim for excessive advisory fees, nor did it set aside the district court's rejection of the conclusory allegation that the funds' directors "failed to act independently and conscientiously" because they purportedly "'lacked the experience necessary' to police Fund practices" and could not "'devote the amount of time' [necessary] to oversee the many portfolios on their watch." In re Salomon Smith, 528 F. Supp. 2d at 339. Rather, the Second Circuit partially reversed the district court's ruling to the extent it dismissed a challenge under Section 36(b) to certain transfer agency fees. As to those fees alone, court ruled that the complaint alleged sufficient facts to state a Section 36(b) claim. It otherwise affirmed the portion of the district court's order dismissing the Section 36(b) claim alleging excessive advisory fees. R.W. Grand Lodge, 425 F. App'x at 30.

directors failed to consider relevant information (Compl. ¶ 127), but this too is "no more than [a] conclusion[] . . . not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

In sum, whether considered individually or collectively, the eleven paragraphs of the Complaint directed at the Funds' directors fall far short of making a plausible showing that they lack the independence and conscientiousness needed to appropriately evaluate whether BRA's advisory fees are reasonably related to the advisory services rendered by BRA and BRIM on behalf of the BlackRock Funds. The allegations therefore are insufficient to "'nudge[]'" plaintiffs' Section 36(b) claim "'across the line from conceivable to plausible.'" Iqbal, 556 U.S. at 680 (citation omitted).

## CONCLUSION

For the reasons stated above and in BlackRock's Opening Brief, defendants' motion for judgment on the pleadings should be granted and the Complaint should be dismissed for failure to state a claim for relief.

Dated: August 11, 2014

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
(A Delaware Limited Liability Partnership)
By: /s/ Andrew Muscato
   Andrew Muscato

OF COUNSEL:
Seth M. Schwartz
Jeremy A. Berman

Attorneys for Defendants
BlackRock Advisors, LLC, BlackRock Investment Management, LLC and BlackRock International Limited